# THE ATTORNEY GENERAL
## OF TEXAS
GERALD C. MANN                    AUSTIN 11, TEXAS
~~JOHN BEN SHEPPERD~~RD
ATTORNEY GENERAL



Honorable Bascom Giles
Commissioner General Land Office
Austin, Texas

Dear Mr. Giles:

Opinion No. O-663
Re: (1) Possibility of suit to cancel awards previously made
(2) Propriety of reissuing patents to nine preference right claimants in Block S and S, Lipscomb and Ochiltree counties.

        This is in reply to the opinion requests contained in your letters of April 19, 1939, and May 12, 1939.

        In your letter of April 1, 1939, you state that the records of your office show that on June 1, 1937, Roy Sansing filed with a licensed land surveyor an application for survey of certain land believed to be unsurveyed public school land, located along the entire north line of Lipscomb County and extending into Ochiltree County, with a view to purchasing same under the Act approved May 29, 1931, which appears as Article 5421c of Vernon's Annotated Civil Statutes. You further state that survey was made on June 15, 1937, that field notes describing the land as Block S and S, containing 4950 acres, were, together with the recorded application to the surveyor, filed with the Land Office on July 6, 1937; that such field notes were cancelled by corrected field notes by the same surveyor filed in the Land Office on September 15, 1937.

        You state that thirty-one separate sets of field notes and applications were subsequently filed by owners of land adjoining the alleged vacancy, who sought to establish their preference right to purchase under Section 6 of the Act above referred to. That on November 29, 1937, the original applicant, Sansing, filed a second corrected set of field notes, excluding the territory covered by preference right applications, and reducing his tract to 980.03 acres. That in September, 1938, the vacancy was approved and awards made by the Land Office to twenty of the preference right applicants; that nine of such preference right purchases have been paid in full; that patents were written and signed by the former Land Commissioner in November, 1938; that another set of corrected field notes of the Sansing tract were filed in the Land Office on December 5, 1938, embracing an acreage of 2343.03 acres, which tract was awarded to Sansing on December 8, 1938; that in each of the above awards, the land was classified as mineral and grazing, and appraised at $1.00 per acre.

You further state that the former Governor, who was in office throughout 1938 and until January 17, 1939, failed to sign the nine patents above referred to, that such patents remained unsigned on January 17, 1939, and that the same have been cancelled on the records of the Land Office for want of the Governor's signature.

Your letter of April 19, 1939, concludes with the following statement:

"The question which confronts this Department at present is whether or not to reissue these patents upon the nine awards of tracts which have been paid in full, together with required fees, or refuse to reissue them and along with the same to consider the other twelve awards as presenting a case in which suit might be brought for cancellation on the grounds of inadequacy of consideration.

"On January 25, 1939, in answer to an inquiry from this Office, a letter was received from the Tax Assessor-Collector of Lipscomb County stating that the W. P. Wiser Surveys Nos. 1 to 10, inclusive, in said county (which surveys join the vacancy) are rendered for taxes at $3.75 per acre for the grass land and $5.00 per acre for the farm land. I have no further definite information as to the actual marketable value of the land in question, but would suppose from a general knowledge of that part of the State it might reasonably be worth ten or twelve dollars per acre. The awards in a general way appear to be otherwise legal, and it is thought the only question that might be involved would be the adequacy of the price paid to the School Fund. The benefit of your consideration of the matter and advice to this Office as to feasibility of a suit for cancellation of the awards on the grounds stated is requested, and any further information from the records here that may be desired will be gladly furnished."

On May 23, 1939, you addressed to us a supplemental letter stating additional facts with reference to these applications and awards, and asking for our opinion on additional questions. Your letter of May 23rd reads, in part, as follows:

"As stated in my former letter, thirty-one separate applications and field notes were filed on the vacancy strip in 1937. The first of these filings was made by Roy Sansing, as discovered of the vacancy and covering the entire strip. The other thirty-nine applications were made by adjoining and enclosing owners with a view to obtaining awards under the preference right

accorded to such owners and occupants in Sec. 6,
Chap. 271, Acts of the 42nd Legislature, dated May
29, 1931.

"Twenty of these preference right applications were
accepted and awarded, and eleven of such applications were
rejected for the reason that theif field notes were consid-
ered as not having been filed in the Land Office within six-
ty days from the date of citation by the surveyor to these
eleven applicants.

"In view of your opinion No. O-664, Re: Time for fil-
ing field notes on land applied for by occupant under Sec.
6, 1931 Sales Act, which opinion advises that the sixty-day
limit in said Act applies to the filing of application for
survey with the surveyor and not to the filing of field
notes in the Land Office, the question is presented as to
the legality of these eleven rejections, and also to the
validity of the sale to Roy Sansing, whose award includes
the land filed on by the eleven rejected applicants. The
field notes and application of each of said rejected appli-
cants were filed in the Land Office within one hundred and
twenty days from the date of filing with the surveyor. It
is further noted that several of the twenty preference
right applicants to whom awards were made did not file their
field notes in the Land Office within sixty days from the
date of citation, but in each of these cases signed waiver
by Roy Sansing was filed, relinquishing his rights in favor
of these respective preference right applicants only. One
of the preference right owners who received awards did not
file his field notes in the Land Office until one hundred
and forty-two days after he filed with the surveyor, but
the other nineteen awarded owners filed within one hundred
and twenty days from such date.

"These additional facts are presented to you as shown
in the records of this Office and for whatever bearing they
might have in your consideration of the questions involved
in the original request of April 19, 1939."

We consider first your question as to whether or not patents should
be reissued by your office covering the land claimed by and awarded to the
nine preference right claimants whose purchases have been paid out in full,
or whether it would be feasible to institute suit to cancel all awards
made out of the block of land in question. From your letter, we understand
that each of the nine claimants who have paid the full purchase price, eith-
er returned field notes to the Land Office within 60 days after the date of
service by citation issued upon him by the surveyor, or that the original
vacancy applicant, Roy Sansing, relinquished his right in favor of such of

said nine claimants who had failed to file field notes within 60 days from the date of service of citation. The sole question to be decided in determining whether or not said nine preference right applicants are entitled to patents is whether or not the inadequacy of the consideration paid by them for the land in question constitutes a legally sufficient ground upon which to base a refusal to reissue such patents, and upon which to maintain suits to cancel the existing awards.

We believe the problem presented by your question can be clarified by a general statement of what we conceive to be the extent of and the limitations upon the power of the Land Commissioner to value public lands prior to sale under Arricle 5421c. Section 6 of Article 5421c, in part, provides as follows:

> "If the area is found by the Commissioner to be unsurveyed and subject to sale, he shall value the land and give notice of the valuation to the applicant, who may purchase the land on the same terms and conditions as presribed by law and the regulations for the sale of surveyed land; provided if the area should be in the enclosure of another person claiming it in good faith or occupied as a home by another, such holder or occupant shall have the preference right for a period of 60 days after service of citation to have the land surveyed on his own application to the surveyor and on the return of the sum advanced by the first applicant for citation and thereupon fix his right to purchase as herein provided. . . ."

It is thus observed that the statute fails to specifically express any limitations upon the power and authority of the Land Commissioner in valuing public school lands prior to sale under Article 5421c. However, we do not believe that the failure of the statute to provide express limitations upon such power can be held to mean that no limitations whatever exist. A proper construction of the power given to the Land Commissioner, in our opinion, is that such power and authority is limited by the conditions and rules that limit the power and authority of an agent of a private individual to sell the lands of his principal at a price which is to be determined by the agent in valuing the land. The grant of power and authority made by the principal to the agent carries with it the implied limitation that the agent will act diligently and in good faith in making a reasonable valuation of the land.

Article 5421c, in our opinion, necessarily must be held to vest in the Land Commissioner a certain amount of discretion in valuing and fixing the price at which public free school land shall be sold. On the other hand, it is equally as clear to us that the courts will not sustain the sale by a Land Commissioner at a price which is so grossly inadequate as to shock the conscience and common sense of all men. The line of demarcation between a lawful and reasonable exercise of the Commissioner's discretion, on one hand, and an illegal sale for a grossly inadequate consideration

on the other is difficult to define. In the very nature of the case, we believe the decision of the question must depend upon the particular facts and circumstances of each sale. But in every instance the presumption should be in favor of the validity and reasonableness of the Land Commissioner's action and an award can only be cancelled, in our opinion, upon a showing by clear and satisfactory evidence that the sale was made at a grossly inadequate price.

In Wintermann v. McDonald, 102 S.W. (2d), the Supreme Court of Texas defined the duty owed by an owner of land sold under Article 5421c to lease the land for minerals as agent of the State. The Court said:

> "The owner of the land acts as the agent of the State in making the mineral leases. This calls for the exercise of a duty by the landowner to the State. The landowner owes to the State good faith in the performance of the duty which he has assumed, and he should discharge that duty with prudence and good faith, and with ordinary care and diligence."

We believe the duty of the Land Commissioner can properly be defined in the same language as used by the Supreme Court with reference to the landowner.

We now consider the facts and circumstances which are present in this case, and upon the basis of which a decision of your questions must depend. Your letter states that you have received a letter from the tax assessor-collector of Lipscomb County stating that the W. P. Wizer Surveys Nos. 1 to 10 inclusive in said county (which surveys adjoin the vacancy) are rendered for taxes at $3.75 per acre for grass land and $5.00 for the farm land. You further state that you have no definite information as to the actual marketable value of the land in question, but that you would suppose from a general knowledge of that part of the State, it might reasonably be worth $10.00 to $12.00 per acre. You further state that the awards in a general way appear to be otherwise legal, and that about the only question that might be involved would be the adequacy of the price paid to the school fund.

Before attempting to answer your question as to the feasibility of a suit to cancel these awards, we secured affidavits of several county officials of Lipscomb County, Texas. Copies of these affidavits are attached to this opinion, and they indicate that the exact value of the land is doubtful.

It is apparent from a statement of the facts and circumstances contained in your letter and from the affidavits attached to this opinion, that the determination of the value of the land in question is a matter of considerable uncertainty. The valuation for tax purposes on adjoining areas affords no conclusive proof as to the value of the tracts under consideration. The cash market value of the tract in question has been estimated by various officials in the county where the land is located as being less than $5.00 per acre. The State in addition has reserved, under the

terms of Article 5421c, a 1/16th royalty of the oil and gas situated in the land, together with a 1/8th royalty in other minerals, which reservation necessarily detracts from the value of the land.

We feel that we are far from having in our possession or within our knowledge sufficient information to warrant a definite conclusion that the land has been sold at a grossly inadequate price, and we must, therefore, answer your question as to the feasibility of maintaining a suit to cancel by stating that under the facts and circumstances which have been brought to our attention at this time, such action would not be feasible. You are further advised that, in our opinion, the consideration paid for these awards was not, according to the facts and circumstances known to us, so grossly inadequate as to warrant a refusal to reissue patents thereon.

In your letter of May 23, 1939, you present the further question as to the legality of the rejection by the former Commissioner of the General Land Office of the preference right applications of various adjoining owners to purchase portions of the land covered by the award to Roy Sansing. You state that such applications were rejected for the reason that "their field notes were considered as not having been filed in the Land Office within 60 days from the date of citation by the surveyor."

In our Opinion No. O-664, written May 1, 1939, we held that a preference right applicant under Section 6 of Article 5421c has 60 days from the date of the service of citation upon him by the surveyor in which to file his own application to have the land surveyed, and that such preference right applicant is allowed 120 days after filing of his application within which to have the land surveyed and the field notes returned to the General Land Office.

In view of such opinion, we must now necessarily hold that the preference right applicants referred to in your letter of May 23, 1939, under the law had 120 days from the date of the filing of their respective applications to have the land surveyed and to return their field notes to the General Land Office. If such procedure was followed by such preference right applicants within the time and in the manner provided by law, they thereby perfected their preference rights to purchase upon complying with the other provisions of Article 5421c.

Your letter does not make clear whether or not such preference right applicants whos applications were rejected did comply in all respects with the provisions of Section 6 of Article 5421c. Such compliance would depend upon various fact questions, such as whether or not the area is in the enclosure of such applicant, whether or not they are claiming it in good faith or occupying it as a home, whether they have returned the sum advanced by the original applicant, Sansing, and whether they have complied with the requirements of the

statute as to the payment of the purchase price after valuation of the
land by the Commissioner of the General Land Office. If and when such
questions are determined by you in favor of the rejected applicants, it
will be necessary to determine the proper procedure for you to follow
with respect to the claims of the original vacancy applicant and of
the rejected preference right applicants under Section 6. For the rea-
sons stated, however, we do not believe it necessary or possible for us
to attempt to answer such questions at this time.

                                        Yours very truly

                                  ATTORNEY GENERAL OF TEXAS


                                  By  /s/ Robert E. Kepke

                                        Robert E. Kepke
                                          Assistant

REK:BT:egw

APPROVED:
/s/ GERALD C. MANN
ATTORNEY GENERAL OF TEXAS


                                        Approved
                                  Opinion Committee
                                    By HOB Chairman